UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BURTON CORTEZ,

        Plaintiff,                  Case No. 2:25-cv-25

v.                                      Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

**Discussion**

I.     **Factual Allegations**

Plaintiff[1] is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following KCF staff: Warden Jeffery Howard, Grievance Coordinator Robin Voorhees, Mailroom Staff Kirt Vahar, Mailroom Staff Shannon Jones, and Unknown Party #1 named as "any unknown Doe(s)."[2] (Compl., ECF No. 1, PageID.1.)

In Plaintiff's complaint, he alleges that on November 5, 2024, state court Judge Roy C. Hayes issued a Notice of Hearing, scheduling a hearing at 1:30 p.m. on November 18, 2024. (*Id.*, PageID.4.) Plaintiff states that this Notice of Hearing was mailed "via the U.S.P.S. (first-class mail)." (*Id.*) Plaintiff did not receive the notice of hearing until November 25, 2024. (*Id.*)

On November 15, 2024, state court Judge Roy C. Hayes re-issued the Notice of Hearing, scheduling a new hearing for November 20, 2024, at 2:00 p.m. (*Id.*) Plaintiff did not receive the re-issued Notice of Hearing until eleven days after the scheduled hearing. (*Id.*)

---

[1] In the case caption of the complaint, Plaintiff lists himself as a Plaintiff, but he also states that he is suing "on behalf of others similarly situated." (Compl., ECF No. 1, PageID.1.) Later in the complaint, Plaintiff states that he is not seeking "class-action certification." (*Id.*, PageID.2.) It does not appear that Plaintiff is a licensed attorney, and as a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of others. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct *their own cases* personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *see also See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Therefore, to the extent that Plaintiff intended to bring this suit on behalf of other unnamed Plaintiffs, he may not do so, and, the Court considers Plaintiff's complaint to be brought solely on his own behalf.

[2] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

Plaintiff claims that he "had/has multiple motions pending, but because the facility withheld both the 'Notices' he was not notified 'what' motion was being heard, causing Plaintiff not to know 'what' to prepare argument for, and [that] caused [him] to bring the wrong court file to the hearing." (*Id.*, PageID.4–5.) Plaintiff also claims that the withholding and delayed receipt of mail "is 'standard practice' at KCF." (*Id.*, PageID.8.)

Plaintiff alleges that when legal mail is mailed to an MDOC correctional facility, it takes approximately four days for the mail to reach the facility, and then the MDOC "hold[s] the legal mail for another 15 days further," by "invok[ing] a clause in the [policy directive] to 'call and/or email' the 'sender' for identification purposes, then the facility does not even attempt to follow the [policy directive] by calling or emailing the necessary authorities to verify 'senders' of the documents as required, then leaving only two (2) days for the recipient to draft and file a response." (*Id.*, PageID.5–6.)

On November 23, 2024, Plaintiff filed a grievance about this matter, and "the Coordinator," Defendant Voorhees, determined it was "'nongrievable,' stating the issue pertained to a policy." (*Id.*, PageID.6; *see id.*, PageID.9.) When the grievance was returned to Plaintiff, the grievance receipt indicated that it was "being 'rejected,'" rather than stating that it was "nongrievable." (*Id.*, PageID.6–7.) Plaintiff claims that by rejecting the grievance, the MDOC "'deters, blocks, and/or by any means stops' access to the courts." (*Id.*, PageID.7.)

Plaintiff identifies MDOC Policy Directive 05.03.118, as the relevant mail policy. (*See id.*, PageID.9.) Plaintiff claims that the 2018 version of the policy stated: "Facilities shall endeavor to process all incoming and outgoing mail within two (2) business days after receipt." (*Id.*, PageID.10.) Plaintiff alleges that the 2023 version of the policy was amended to state: "If the sender cannot be ID'd, reached by telephone number to confirm that the mail was sent by them –

3

staff shall hold mail for 15 days, and shall try no more than two (2) times per week (once by email) to contact the sender." (*Id.*) Plaintiff states that the mail sent to him by state court Judge Roy C. Hayes had the judge's name, "the court, and court address . . . clearly embossed on the upper left hand corner of the envelope." (*Id.*) Plaintiff claims that upon receipt of the mail sent to him by the state court, the MDOC "failed to follow []their own[] policy, or they would have located the number and mailing address in the Michigan Bar Journal and made contact." (*Id.*, PageID.10–11.) Plaintiff also claims that his mother contacted the Charlevoix County Clerk, and the clerk told Plaintiff's mother "that no contact was made by any personnel from [KCF]." (*Id.*, PageID.11.) Plaintiff alleges that "this [failure to contact the state court clerk] is a clear violation of Policy Directive . . . 05.03.118," and shows that the MDOC is "'holding' the mail without 'good cause'" and "delaying [receipt] of legal mail." (*Id.*)

Further, Plaintiff states that he wants "to be able to litigate the raised issue[s]" without facing any retaliation at KCF. (*Id.*, PageID.11–12.) Plaintiff lists the various ways in which he does not want to be retaliated against; however, Plaintiff does not allege that he in fact faced any retaliation. (*See id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise the following claims under § 1983: First Amendment mail interference claims, Fourteenth Amendment due process claims regarding receipt of legal mail, access to the courts claims, claims regarding Plaintiff's use of the grievance procedure, and First Amendment retaliation claims. Plaintiff also brings § 1981 and § 1985 claims, and unspecified state law claims. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief in the form of the "termination of Paragraph []KK [in] [Policy Directive] 05.03.118" and that "delivery of any/all documents

4

received from []a[] court, attorney, or other legal institution to any prisoner . . . be addressed within 48 hours of arrival to the facility." (*Id.*, PageID.14.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

5

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Unknown Party #1 Named as Any Unknown Doe(s)

In the case caption of Plaintiff's complaint, he lists "[a]ny unknown Doe(s)" as a Defendant; however, in the body of the complaint, when identifying the Defendants in this suit, Plaintiff does not list this Defendant, and the complaint contains no further reference to this Defendant. (Compl., ECF No. 1, PageID.1, 4.) Instead, Plaintiff states only that he "'reserves [the] right' to amend Defendant(s)." (*Id.*, PageID.4.)

The Court notes that if Plaintiff wishes to do so, he may seek leave to amend his complaint as provided by the Federal Rules of Civil Procedure. However, Plaintiff cannot state a claim against "[a]ny unknown Doe(s)" without providing some factual allegations against this Defendant. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Plaintiff has not done so here. Accordingly, Defendant Unknown Party #1 and Plaintiff's claims against this Defendant will be dismissed for failure to state a claim.

### B.    Section 1981 and 1985 Claims

In the first paragraph of Plaintiff's complaint, he references 42 U.S.C. §§ 1981 and 1985; however, the complaint contains no further reference to §§ 1981 and 1985. (Compl., ECF No. 1, PageID.1.) Liberally construing Plaintiff's *pro se* complaint, as the Court is required to do at this stage, the Court construes Plaintiff's complaint to raise claims under §§ 1981 and 1985.

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors and provides a cause of action for race-based employment discrimination. *See* 42 U.S.C. § 1981. In *Jett v. Dallas Independent School*

6

*District*, 491 U.S. 701 (1989), the Supreme Court held that § 1981 does not itself provide a remedy against state actors. *Id.* at 731. Plaintiff's claims are against state actors. And, regardless, Plaintiff fails to allege any *facts* showing that he was involved in the making or enforcing of contracts between public and private actors or that he faced race-based employment discrimination. Plaintiff therefore fails to state a claim under § 1981.

Further, to maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[3] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff fails to allege sufficient facts to suggest that Defendants' alleged actions were motivated by racial or class-based animus. Therefore, Plaintiff's § 1985 claims will be dismissed.

---

[3] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

In summary, for the reasons set forth above, Plaintiff's claims under §§ 1981 and 1985 will be dismissed for failure to state a claim.

C.     **First Amendment Claims Regarding Interference With Legal Mail**

The Court construes Plaintiff's complaint to raise First Amendment claims regarding alleged interference with his receipt of legal mail.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.

The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v.*

8

*Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence . . . ." *Kensu*, 87 F.3d at 174 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. "Mail from an attorney . . . is legal mail as a matter of law . . . ." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Sallier*, 343 F.3d at 877). This includes where the attorney does not have an established attorney-client relationship. *See id.* Furthermore, although not all federal courts consider mail from courts to be "legal mail," *see, e.g.*, *Martin v. Brewer*, 830 F.2d 76, 78–79 (7th Cir. 1987); *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998), the Sixth Circuit does, *see Sallier*, 343 F.3d at 876–77, and that is reflected in the MDOC policy directive.

Here, Plaintiff alleges that he was sent Notices of Hearings by state court Roy C. Hayes, which Plaintiff describes as "legal mail." (Compl., ECF No. 1, PageID.4.) Plaintiff states that due to the MDOC's mail policy, which provides that MDOC staff may contact senders of legal mail to verify that they in fact were the senders of the mail and that staff are permitted to hold legal mail for 15 days to conduct these inquiries, Plaintiff's receipt of his legal mail was delayed to the point that it was impossible for Plaintiff to timely respond to court filings and to prepare for court hearings. In terms of the named Defendants' involvement in this alleged policy, Plaintiff fails to allege any facts to suggest that Defendant Voorhees, the grievance coordinator at KCF, had any involvement in Plaintiff's receipt of his mail or the implementation of the MDOC's mail policy. (*See generally id.*) Therefore, Plaintiff's First Amendment mail claim against Defendant Voorhees will be dismissed for failure to state a claim. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of

specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

With respect to Defendants Washington, Howard, Vahar, and Jones, Plaintiff's complaint lacks specificity as to each Defendant's involvement in the matter; however, Plaintiff suggests that Defendant Washington is involved in the "approval of all policy directives," that Defendant Howard, as the warden at KCF, is involved in the implementation of the legal mail policy at KCF, and that Defendants Vahar and Jones work in the mailroom at KCF and apply the legal mail policy to KCF prisoners' legal mail. (*See id.*, PageID.3–4.) There are likely a number of concerns, such as the security of the MDOC's correctional facilities, that support the MDOC's implementation of the legal mail policy that Plaintiff challenges in this suit. However, those issues are not before the Court at this early stage of the proceedings. Indeed, at this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, although Plaintiff has by no means proven his First Amendment legal mail claims against Defendants Washington, Howard, Vahar, and Jones, the Court will not dismiss Plaintiff's First Amendment legal mail claims against these Defendants at this time.

   **D.**  **Fourteenth Amendment Due Process Clause Claims Regarding Legal Mail**

The Court also construes Plaintiff's complaint to raise Fourteenth Amendment due process claims regarding his receipt of his legal mail.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.

10

*Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin*, 803 F.2d at 243–44. The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

Here, Plaintiff claims that his mail was withheld for a period of time but that he eventually received his mail. (*See generally* Compl., ECF No. 1.) Although Plaintiff wished to receive his legal mail more quickly, it is clear from Plaintiff's complaint that he received the process to which he was due because he eventually received his mail and it was not rejected. (*Id.*) If Plaintiff's mail had been rejected and not given to him, he would have been entitled to notice of the rejection and a hearing regarding the rejection. However, this is not a case where Plaintiff did not receive the mail that was sent to him; he simply received the mail at a later date than he wished to receive it. Under these circumstances, the Court concludes that Plaintiff has failed to state a due process claim regarding his delayed receipt of his legal mail.

E. **Access to the Courts Claims**

Plaintiff claims that the withholding of his legal mail for a period of time and his delayed receipt of the legal mail interfered with his right to access the courts. (*See, e.g.*, Compl., ECF No. 1, PageID.5–6.) Plaintiff also claims that by rejecting his grievance regarding the mail policy, his

11

right to access the courts was violated, and Plaintiff alleges that the MDOC routinely employs this practice. (*See id.*, PageID.7.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to

> challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff alleges that he received two Notices of Hearings from state court Roy C. Hayes days after the scheduled hearings were supposed to occur. (Compl., ECF No. 1, PageID. 4–5.) Plaintiff claims that he "had/has multiple motions pending, but because the facility withheld both the 'Notices' he was not notified 'what' motion was being heard, causing Plaintiff not to know 'what' to prepare argument for, and [that] caused [him] to bring the wrong court file to the hearing." (*Id.*) Although Plaintiff references this state court judge and the Charlevoix County Court, Plaintiff does not specify the specific type of underlying action, or actions, that he was pursuing in state court. Because Plaintiff fails to identify the specific type of underlying action at issue, Plaintiff necessarily fails to show that he was asserting non-frivolous claims in these unspecified actions. Under these circumstances, Plaintiff has failed to state a claim for denial of access to the courts regarding his delayed receipt of the Notices of Hearings.

Further, with respect to Plaintiff's claim that in light of the PLRA's exhaustion requirement, rejecting his grievance denied him access to the courts, the rejection of his grievance did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, for the reasons set forth above, Plaintiff's access to the courts claims will be dismissed.

    **F.**    **Claims Regarding Use of the Grievance Procedure**

The Court construes Plaintiff's complaint to raise First and Fourteenth Amendment claims regarding Plaintiff's use of the grievance procedure. (*See* Compl., ECF No. 1, PageID. 6–7 (alleging that Defendant Voorhees initially determined that Plaintiff's grievance regarding the prison mail policy was "nongrievable," but then the grievance was returned to Plaintiff as "rejected").)

As to Plaintiff's Fourteenth Amendment due process claims, Plaintiff has no due process right to file a prison grievance. Various courts have repeatedly held that there exists no

14

constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Therefore, Plaintiff's procedural due process claims regarding Plaintiff's use of the grievance procedure will be dismissed.

Furthermore, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). As discussed above, the rejection of Plaintiff's grievance did not bar Plaintiff from seeking a remedy for his grievances. *See supra* Section II.E.

Accordingly, for these reasons, Plaintiff's claims regarding his use of the grievance procedure will be dismissed for failure to state a claim.

      **G.**    **First Amendment Retaliation Claims**

In Plaintiff's complaint, he states that he wants "to be able to litigate the raised issue[s]" without facing any retaliation at KCF. (Compl., ECF No. 1, PageID.11–12.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of the present lawsuit constitutes protected activity; however, although Plaintiff states that he wants to litigate this suit without being retaliated against and he lists the various ways in which he does not want to be retaliated against, Plaintiff does not allege that he in fact faced any retaliation. (Compl., ECF No. 1, PageID.11–12.) Therefore, Plaintiff fails to state any First Amendment retaliation claims because Plaintiff does not allege that he has been retaliated against.

### H. Unspecified State Law Claims

In the first paragraph of Plaintiff's complaint, he references alleged "multiple violations of the Michigan Constitution 1963," however, Plaintiff's complaint contains no further reference to any specific state law claims. (*See* Compl., ECF No. 1, PageID.1.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law and MDOC policy fails to state a claim under § 1983.

Furthermore, because Plaintiff fails to identify any specific state law claims that he intends to raise in this lawsuit, he necessarily fails to allege sufficient facts to state any such unspecified claims. Under these circumstances, any intended state law claims will be dismissed for failure to state a claim upon which relief may be granted.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Voorhees and Unknown Party #1 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Washington, Howard, Vahar, and Jones: §§ 1981 and 1985 claims; Fourteenth Amendment due process claims regarding delayed receipt of Plaintiff's mail; access to the courts claims; claims regarding Plaintiff's use of the grievance procedure; First Amendment retaliation claims; and any intended state law claims. Plaintiff's First Amendment legal mail claims against Defendants Washington, Howard, Vahar, and Jones remain in the case.

An order consistent with this opinion will be entered.

Dated:   May 22, 2025                                   /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge